IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

OCWEN LOAN SERVICING, LLC,    )        CIVIL 13-00497 LEK-KSC
                             )
         Plaintiff,          )
                             )
    vs.                      )
                             )
KENNY T. LUM, MIE VIVI WELLS, )
REX SCHAUMLEFFEL, SOVEREIGN   )
PACIFIC ASSET MANAGEMENT,     )
                             )
         Defendants.         )
_____ )

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Ocwen Loan Servicing, LLC's ("Plaintiff") Motion for Summary Judgment ("Motion"), filed November 12, 2014. [Dkt. no. 28.] Defendant Rex Schaumleffel ("Schaumleffel") filed his memorandum in opposition on February 13, 2015, and Plaintiff filed its reply on February 23, 2015. [Dkt. nos. 58, 61.] This matter came on for hearing on March 9, 2015. After the hearing, the Court directed Plaintiff to file a supplemental brief regarding its standing to bring the instant case. [Entering Order, filed 3/12/15 (dkt. no. 77 ("3/12/15 EO")).] Accordingly, on March 19, 2015, Plaintiff filed its supplemental brief and, on March 24, 2015, Schaumleffel filed his supplemental response. [Dkt. nos. 79, 80.] After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiff's Motion is HEREBY GRANTED for the reasons set forth below.

## I.  Complaint

On September 30, 2013, Plaintiff – a Delaware corporation with its principal place of business in Florida – filed its complaint against Defendants – and Hawai`i residents – Kenny T. Lum ("Lum"), Mie Vivi Wells ("Wells"), Schaumleffel, Marc Melton ("Melton"), and Sovereign Pacific Asset Management Trust ("SPAM," all collectively "Defendants"),[1] asserting diversity jurisdiction.  [Complaint at ¶¶ 1-9.]  This action is, in essence, an attempt by Plaintiff, the successor in interest in a mortgage, to reassert the lien after the recordation of a fraudulent satisfaction executed by Melton, and subsequent sale of the property by Lum and Wells to Schaumleffel, a bona fide purchaser for value.  [Id. at ¶¶ 10-35.]

The Complaint alleges the following claims: a declaratory judgment against all Defendants that Plaintiff's lien has priority, even over Schaumleffel ("Count I"); conversion against Lum, Wells, and Melton, for their involvement in the purported fraud ("Count II"); tortious interference with contractual relations against Melton for signing the fraudulent satisfaction on behalf of Plaintiff's predecessor in interest, GMAC Mortgage, LLC ("Count III"); civil conspiracy against Lum,

---

[1] According to the Complaint, SPAM is a "fictitious business" operated by Melton.  [Complaint at ¶ 5.]

Wells, and Melton ("Count IV"); and an equitable lien against Defendants, in the event that the Court does not void the fraudulent satisfaction ("Count V"). [Id. at ¶¶ 36-71.]

Plaintiff seeks a declaratory judgment that: Plaintiff has a superior, valid, and enforceable interest in the property; the mortgage was not eliminated by the satisfaction; to the extent it was eliminated, the mortgage and lien interest are reinstated; and Schaumleffel's interest is subject to the mortgage. [Id. at pgs. 10, 16.] In addition, Plaintiff requests the following remedies: actual and punitive damages, based on the tort claims; attorneys' fees and costs; and all other appropriate relief. [Id. at pgs. 10, 13, 14.]

## II. **Answers and Defendants' Cross Claims and Third-Party Claims**

Rather than filing an answer, on February 21, 2014, Melton – who appears to have been at the center of the fraudulent mortgage elimination scheme – filed a number of documents, in which he admitted the allegations in the Complaint. [Melton Notice of Acceptance (dkt. no. 12-1) at 1 ("I do not dispute any of the facts in the accepted Presentment, and, because the Presentment is accepted and returned to the Court timely, there is no genuine controversy for the Court to adjudicate involving MARC MELTON." (emphasis omitted)).] He does not oppose the

Motion.[2]

Lum and Wells deny wrongdoing, and Wells has brought a cross claim against Melton.[3] [Dkt. no. 11-1 (Defendant Mie Vivi Wells Cross-Claim against Defendants Sovereign Pacific Asset Management Trust and Marc Melton ("Cross-Claim")), filed 2/24/14.] Wells appears to request indemnification in the event there is a judgment against her and Lum. [Cross-Claim at 6.] Lum and Wells also bring third-party complaints against McTigue and Blackwell, and their businesses, Optimum Realty LLC, and Optimum Marketing & Management, who Lum and Wells allege participated in the fraud. [Dkt. nos. 19 (filed 3/10/14), 22 (filed 3/20/14).] However, neither Lum nor Wells oppose the Motion.

--------

[2] On January 3, 2014, Jennifer Ann McTigue ("McTigue"), Melton, and Sakara Blackwell, also known as "Dawn Sakaguchi" ("Blackwell"), were indicted in a forty-five count indictment related to the mortgage elimination scheme. See United States v. McTigue, CR 14-00010 HG ("McTigue"), Indictment (dkt. no. 1). On January 21, 2015, the district judge accepted Melton's plea of guilty to Counts 1 and 2 of the indictment, charging him with Conspiracy to Commit Wire Fraud, Mail Fraud and Money Laundering; and Conspiracy to Launder Monetary instruments. [McTigue, dkt. no. 112.] McTigue and Blackwell are currently set for trial starting August 18, 2015. [McTigue, dkt. no. 116 (filed 4/2/15).]

[3] It appears that Lum may have attempted to bring a cross-claim against Melton as well. He filed a document titled, "Defendant Kenny T. Lum's Answer to Complaint Filed Sepetmber [sic] 30, 2013 and Cross-Claim against Defendants Sovereign Pacific Asset Managmenet [sic] Trust and Marc Melton." [Dkt. no. 18.] Unlike Wells's answer, however, Lum's answer did not attach a cross-claim even though Wells and Lum are represented by the same counsel.

4

Schaumleffel, on the other hand, has brought cross claims against his co-defendants, including against Lum and Wells, who he alleges were part of the fraud. [Dkt. no. 24 (filed 6/30/14) at 7-10 (Cross-Claim Against Defendants Kenny T. Lum, Mie Vivi Wells, Sovereign Pacific Asset Management, and Marc Melton ("Schaumleffel Cross-Claim")).] He also filed a third-party complaint against Richard Ornellas and Kevin Lum, alleging they were involved in the fraud along with the co-defendants. [Dkt. no. 57 (filed 2/12/15).] Schaumleffel is the sole Defendant that opposes the Motion.

## III. **Factual Background**

The following facts are undisputed.[4]

On January 22, 2007, GMAC Mortgage USA Corporation

---

[4] On November 12, 2014, Plaintiff filed its Separate Concise Statement of Facts in Support of its Motion for Summary Judgment and, on November 13, 2014, it filed its Amended Separate Concise Statement of Facts in Support of its Motion for Summary Judgment. [Dkt. nos. 30, 32.] All references in this Order to the "Plaintiff CSOF" are to the amended version. On February 13, 2015, Schaumleffel filed his (1) Objections to Ocwen Loan Servicing LLC's Separate Concise Statement of Facts in Support of Its Motion for Summary Judgment and (2) Separate Concise Statement of Facts in Support of His Opposition to Plaintiff Ocwen Loan Servicing, LLC's Motion for Summary Judgment ("Schaumleffel CSOF"). [Dkt. no. 59.] Since none of the defendants dispute Plaintiff's CSOF as to Facts 1-6 and 10, they are deemed admitted. See Local Rule LR56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."). To the extent that Schaumleffel disputes Facts 7-9 and 11-13, those objections are specifically noted, or the facts are not included in this section.

("GMAC-USA") extended a $469,600.00 loan to Lum to purchase a condominium unit in Waikiki ("Property") in exchange for a promissary note ("Note"). [Pltf. CSOF at ¶ 1; id., Affidavit in Support of Motion for Summary Judgment ("Montoya Aff."), Exh. 2.] Lum and Wells executed and granted Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for GMAC-USA, a mortgage ("Mortgage") encumbering the Property, which was recorded on January 30, 2007 with the Hawai`i Bureau of Conveyances ("Hawai`i BOC"). [Pltf. CSOF at ¶ 2; Montoya Aff., Exh. 3.] On September 30, 2010, MERS assigned the Mortgage to GMAC Mortgage, LLC ("GMACM") and, on October 7, 2010, GMACM recorded the assignment with the Hawai`i BOC. [Pltf. CSOF at ¶ 3; Montoya Aff., Exh. 4.]

Lum and Wells defaulted on their mortgage payments and, on October 18, 2010, GMACM recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale with the Hawai`i BOC ("Notice of Intent"). [Pltf. CSOF at ¶ 4; Montoya Aff., Exh. 5 (Notice of Intent).] On November 9, 2010, GMACM and Lum and Wells executed a repayment plan ("Repayment Plan"), which acknowledged default, and reaffirmed their debt obligation. [Pltf. CSOF at ¶ 5; Montoya Aff., Exh. 6.] Thereafter, Lum and Wells breached the Repayment Plan by failing to make the required payments. [Pltf. CSOF at ¶ 6.]

On August 19, 2011, Lum mailed GMACM documents, including a "Certified Promissory Note" ("Fraudulent Note"), and "Mortgage Satisfaction Agreement" ("Fraudulent Agreement," all together "Mortgage Satisfaction Packet"). [Id. at ¶ 7; Montoya Aff., Exh. 7.[5]] The Fraudulent Note, executed by Lum, McTigue and Melton, purported to pay $490,000.00 to GMACM in full satisfaction of Lum's debts, [Mortgage Satisfaction Packet at 7-8,] and the Fraudulent Agreement provided for release from the Mortgage if GMACM did not respond within three days [id. at 10-11].

On September 16, 2011, Melton executed a document, titled "Satisfaction," which purported to release Wells and Lum from the Mortgage ("Fraudulent Satisfaction"). [Pltf. CSOF at ¶ 8; Montoya Aff., Exh. 8.] The Fraudulent Satisfaction reads in full:

> On this 16th day of September, 2011, before me, a Notary Public, personally appeared Marc Melton, Assistant Secretary for GMAC MORTGAGE, LLC, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

---

[5] Since the Mortgage Satisfaction Packet is comprised of multiple documents, the Court refers to the exhibit's page number from the court's Case Management/Electronic Case Filing (CM/ECF) system in discussing Exhibit 7.

> I certify under PENALTY OF PERJURY under the laws
> of the State of Hawai`i that the foregoing
> paragraph is true and correct.

[Fraudulent Satisfaction at 2.] Further, Melton executed the

satisfaction as the "Asst. Secretary For GMAC MORTGAGE, LLC."

[Id.]

On September 19, 2011, Melton recorded the Fraudulent

Satisfaction "for GMAC MORTGAGE, LLC" with the Hawai`i BOC.

[Pltf. CSOF at ¶ 10; Fraudulent Satisfaction at 1.] Melton was

not at that time, or any other, an employee or affiliate of

GMACM, nor was he authorized to speak on behalf of GMACM.[6]

[Pltf. CSOF at ¶¶ 8-9; Melton Notice of Acceptance.]

On October 17, 2011, Lum, Wells, and Schaumleffel

executed an Exchange Apartment Deed ("Exchange Deed") conveying

the Property to Schaumleffel and, on November 9, 2011,

Schaumleffel recorded the Exchange Deed with the Hawai`i BOC.

[Pltf. CSOF at ¶ 12; Montoya Aff., Exh. 9.] On August 27, 2013,

an assignment of the Mortgage was recorded with the Hawai`i BOC,

conveying the Mortgage from GMACM to Plaintiff ("Assignment").[7]

_____

[6] While Schaumleffel does not object to the substance of the
facts about the Fraudulent Satisfaction, he raises a hearsay
objection, arguing that Plaintiff relies solely on inadmissible
evidence, namely a purported copy of the Fraudulent Satisfaction.
See Schaumleffel CSOF at ¶¶ 8-9 (citing Fed. R. Evid. 802).
Since no party objects to the facts themselves, the Court has
accepted them as undisputed.

[7] Roberto Montoya, a Senior Loan Analyst for Plaintiff,
attests that there is a current unpaid principal balance of
(continued...)

[Pltf. CSOF at ¶ 13; Montoya Aff., Exh. 1.]

## DISCUSSION

The central issue in the Motion, and the case, is the effect of the Fraudulent Satisfaction on the Mortgage: whether the Fraudulent Satisfaction extinguished the Mortgage and, if it did, whether the Court should reinstate the Mortgage as an equitable remedy. The result will be that either Plaintiff or Schaumleffel will bear the loss and be forced to seek indemnification from Melton and the other individuals involved in the mortgage elimination scheme.

## I.  Standing

As an initial matter, Schaumleffel argues that Plaintiff does not have standing to bring this action. Specifically, he argues that, although Plaintiff has offered evidence that it was assigned the Mortgage, it has neither offered any evidence that it actually possesses the Mortgage nor that it offered consideration for the Assignment. He further points out that it is incongruous that GMACM is actively pursuing foreclosure on the Mortgage in state court, while Plaintiff is

---

[7](...continued)
$469,482.60, exclusive of unpaid interest, escrow items, and other costs accruing from the date of default. [Montoya Aff. at ¶¶ 2, 19.] Schaumleffel objects that the affidavit alone, without business records, is insufficient to support this fact. [Schaumleffel CSOF at ¶ 11.]

asserting its own interest in the Mortgage before this Court.[8]
[Mem. in Opp. at 16-18; Schaumleffel's Suppl. Response at 2-7.]

The law is settled in this jurisdiction, however, that a mortgagee need not hold paper title to assert its right under a mortgage. See, e.g., March v. Mortg. Elec. Registration Sys., Inc., Civil No. 12-00306 DKW-BMK, 2014 WL 4804218, at *4 (D. Hawai`i Sept. 26, 2014) ("Under Hawai`i law, a party who shows a direct chain of paper title that he is the owner of the land demonstrates prima facie evidence of their contents and that title is vested in that party." (citation, internal quotation marks, and brackets omitted)); Lowther v. U.S. Bank N.A., Civil No. 13-00235 LEK-BMK, 2014 WL 2452598, at *5 (D. Hawai`i May 30, 2014) ("Hawai`i law holds that proof of possession of a note is **not** required." (emphasis in Lowther) (some citations omitted) (citing Bank of New York Mellon Trust Co., Nat'l Ass'n v. Timosan, No. CAAP-12-0000865, 2014 WL 37886, at *4 (Hawai`i Ct. App. Jan. 6, 2014))). And this Court is not persuaded that a different standard should apply from the standard foreclosure context just because the Fraudulent Satisfaction purportedly

---

[8] While Schaumleffel raised these issues in his memorandum in opposition to the Motion, Plaintiff's response on the issue was conclusory. See Reply at 13-15. Similarly, Plaintiff did little to support its standing argument at the hearing on the Motion. Consequently, on March 12, 2015, this Court issued the 3/12/15 EO directing Plaintiff to make a "showing that it is entitled to bring these claims." [Dkt. no. 77 at 2.] Accordingly, Plaintiff filed its supplemental brief and Schaumleffel filed his supplemental response.

severed the chain of title. Where, as here, the Assignment is
undisputed, see supra Background Section III, Plaintiff need not
actually hold the paper title to assert its rights. Further,
Schaumleffel does not cite to any precedent, and this Court is
not aware of any, requiring Plaintiff to have paid consideration
for the Assignment to assert its rights under the Mortgage.[9]

The Court thus rejects Schaumleffel's argument and
CONCLUDES that Plaintiff has standing to bring this action, at
least as to Counts I through IV. See supra n.9.[10] However, the
Court agrees with the parties that this conclusion is
inconsistent with GMACM pursuing the foreclosure action in the
state court. See Pltf.'s Suppl. Brief (stating that "GMAC no
longer has any interest in the Mortgage or Note"); Mem. in Opp.
at 17 ("GMAC claims to hold and have the rights under the Note in
the pending state court foreclosure action, whereas [Plaintiff]
claims to have the rights in this federal court reinstatement

_____

[9] Beneficial Hawaii, Inc. v. Kida, 96 Hawai`i 289, 312, 30
P.3d 895, 918 (2001), provides no support for Schaumleffel.
There the question was whether the mortgagee had a right to an
equitable lien where its interest was erased when the Court found
the initial mortgage void. Here, the issue is whether the
Fraudulent Satisfaction, not the Mortgage, is void, so Beneficial
Hawaii only applies to Plaintiff's equitable claim in the event
that the Court concludes that the Fraudulent Satisfaction is not
void. As discussed below, the Court concludes that the
Fraudulent Satisfaction is void. See infra Discussion Section
IV.

[10] Moreover, the Court finds that Schaumleffel's standing
here is not an issue because he does not challenge the
Assignment. See Pltf.'s Suppl. Brief at 4-5.

action.  Both cannot be true.").  Thus, it appears proper that

GMACM dismiss the state case or substitute Plaintiff as the

plaintiff in that action.

## II. **Whether the Fraudulent Satisfaction is Void**

As to the merits of the case, the parties' arguments

focus on whether the fraudulent conduct was fraud in the factum

or fraud in the inducement.  Schaumleffel argues that Melton's

act of signing and filing the Fraudulent Satisfaction was fraud

in the inducement and thus the satisfaction was voidable, not

void, and Plaintiff's lax assertion of its rights tips the

equities toward Schaumleffel.  [Mem. in Opp. at 6-16.]

Plaintiff, on the other hand, argues that the Fraudulent

Satisfaction constitutes fraud in the factum, which automatically

voids the Satisfaction.  Since the Satisfaction is void, there is

no need to balance the equities and, even if there was, Plaintiff

was blameless and thus retains priority.  [Mem. in Supp. of

Motion at 7-12; Reply at 4-13.]

The Hawai`i Supreme Court has recognized three

types of fraud in the mortgage context:

> (1) fraud in the factum, (2) fraud in the
> inducement, and (3) constructive fraud.  Honolulu
> Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196,
> 201, 753 P.2d 807, 811 (1988).  "'Fraud in the
> factum is fraud which goes to the nature of the
> document itself.'"  Id. at 201 n.6, 753 P.2d at
> 811 n.6 (quoting Adair v. Hustace, 64 Haw. 314,
> 320 n.4, 640 P.2d 294, 299 n.4 (1982)).  "'Fraud
> in the inducement is fraud which induces the
> transaction by misrepresentation of motivating

12

> factors.'" <u>Id.</u> at 201, 753 P.2d at 811 (quoting
> <u>Adair</u>, 64 Haw. at 320 n.4, 640 P.2d at 299 n.4
> (internal quotation marks and citation omitted)).
> "Constructive fraud is characterized by the breach
> of fiduciary or confidential relationship." <u>Id.</u>
> at 201 n.6, 753 P.2d at 811 n.6 (citing <u>Silva v.
> Bisbee</u>, 2 Haw. App. 188, 190, 628 P.2d 214, 216
> (1981)).

<u>Aames Funding Corp. v. Mores</u>, 107 Hawai`i 95, 103-04, 110 P.3d

1042, 1050-51 (2005). If a party proves that it was the victim

of fraud in the factum, the fraudulent document is void; however,

if it proves fraud in the inducement, the document is merely

voidable. <u>See, e.g.</u>, <u>Standard Fin. Co. v. Ellis</u>, 3 Haw. App.

614, 618, 657 P.2d 1056, 1059 (1983). "'[A]n action to cancel a

deed for fraud may be maintained against a true bona fide

purchaser if the alleged fraud is fraud in the factum, but not if

it is fraud in the inducement.'" <u>Newcomb v. Cambridge Home

Loans, Inc.</u>, 861 F. Supp. 2d 1153, 1167 (D. Hawai`i 2012)

(alteration in <u>Newcomb</u>) (quoting <u>Adair v. Hustace</u>, 64 Haw. 314,

640 P.2d 294, 299 n.4 (1982)).

> "To constitute fraudulent inducement sufficient to
> invalidate the terms of a contract, there must be
> (1) a representation of a material fact, (2) made
> for the purpose of inducing the other party to
> act, (3) known to be false but reasonably believed
> true by the other party, and (4) upon which the
> other party relies and acts to his or her damage."

<u>Camat v. Fed. Nat'l Mortg. Ass'n</u>, Civil No. 12-00149 SOM/BMK,

2012 WL 2370201, at *6 (D. Hawai`i June 22, 2012) (some citations

omitted) (quoting <u>Hawaii Cmty. Fed. Credit Union v. Keka</u>, 94 Haw.

213, 230, 11 P .3d 1, 18 (2000)). "'Compared to fraud in the

inducement, fraud in the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly told that it is just a letter.'" Beazie v. Amerifund Fin., Inc., Civil No. 09-00562 JMS/KSC, 2011 WL 2457725, at *10 (D. Hawai`i June 16, 2011) (quoting Black's Law Dictionary 732, fraud in the factum (9th ed. 2009)).

Plaintiff argues that the Fraudulent Satisfaction was fraud in the factum because Melton purported to sign as an officer of GMACM and he had no authority whatsoever to do so. Schaumleffel responds that the mortgage elimination scheme does not fall within the narrow set of fraud in the factum cases. Rather, the scheme was fraud in the inducement for two alternate reasons: (1) the Fraudulent Note was used to induce GMACM to release the Mortgage; or (2) the Fraudulent Satisfaction was used to induce a bona fide purchaser, here Schaumleffel, to purchase the Property.

While Schaumleffel may have a meritorious claim of fraud in the inducement against the perpetrators of the fraudulent mortgage elimination scheme, that is not the issue in this case. The issue is whether Plaintiff may void a document that purports to bear its signature, which it neither executed nor authorized to be executed. Put another way, this is not a "fraud case" that fits squarely with the factum/inducement dichotomy because Melton neither tricked Plaintiff into signing

anything nor induced it to sign anything. Rather, it is a case of simple forgery or false authority, both of which result in void documents under Hawai`i law.[11]

This district court, quoting Hawai`i law, recently concluded that a "'forged deed is void and passes no title.'" Hancock v. Kulana Partners, LLC, 992 F. Supp. 2d 1053, 1060 (D. Hawai`i 2014) (quoting Palau v. Helemano Land Co., 22 Haw. 357, 361 (Hawai`i Terr. 1914)). While the issue here is of a forged satisfaction and not a forged deed, Palau applies equally here.

The parties, however, cite to out-of-state decisions to dispute whether the Fraudulent Satisfaction is technically a forgery. [Mem. in Opp. 8-9; Reply at 5-8.] Under Hawai`i law, the answer is relatively straight-forward:

> **A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely** makes, completes, **endorses,** or alters **a written instrument**, or utters a forged instrument, or fraudulently encodes the magnetic ink character recognition numbers, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will,

---

[11] Contrary to Schaumleffel's argument, this is not a constructive fraud case. Under Hawai`i law, constructive fraud is a term of art used to describe an act done without "an actual design to perpetrate actual fraud or injury" but that involves a "special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other." Wolfer v. Mut. Life Ins. Co. of New York, 3 Haw. App. 65, 76, 641 P.2d 1349, 1357 (1982) (citations omitted). That is clearly not the case here. To the extent that Schaumleffel cites out-of-circuit decisions that conflict with Hawai`i law and this Court's ruling, the Court does not follow them.

> codicil, contract, assignment, commercial
> instrument, or other instrument **which does** or may
> evidence, create, transfer, **terminate**, or
> otherwise affect **a legal right**, interest,
> obligation, or status.

Haw. Rev. Stat. § 708-852 (emphasis added). According to Haw. Rev. Stat. § 708-850, "falsely endorse" means "to endorse, without the authority of the ostensible maker, drawer, or issuing commercial establishment, . . . so that the written instrument so endorsed falsely appears or purports to be authorized by the ostensible maker, drawer, or issuing commercial establishment." According to Hawai`i law, Melton forged the Fraudulent Satisfaction, and thus it is void.

Alternatively, no party argues that Melton had authority to execute the Fraudulent Satisfaction. It is black letter law that a document is void if it is signed with "a want of authority for its issue." Territory, by Bailey v. Robinson, 25 Haw. 651, 661-62 (1920) ("But if those officers acted without authority; if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void - void for want of power in them to act on the subject-matter of the patent, not merely voidable[.]"). The Court therefore reaches the same conclusion following this analysis.

The Court FINDS that, since it was a forgery and Melton had no authority to execute it, the Fraudulent Satisfaction is void.

### III. **Balancing the Equities**

Schaumleffel argues that, "even where a satisfaction or release of mortgage is forged and void, courts have allowed a subsequent bona fide purchaser or mortgagee to be protected if the first mortgagee was lax or careless in failing to pay attention to 'red flags' and taking steps to prevent subsequent potential victims of a scam." [Mem. in Opp. at 11 (citing and discussing <u>Sunrise Sav. & Loan Ass'n of Florida v. Giannetti</u>, 524 So. 2d 697 (Fla. Dist. Ct. App. 1988)).] Even if the Court were to find the Fraudulent Satisfaction merely voidable or that void contracts were only selectively enforceable against bona fide purchasers for value, the equities tip in favor of Plaintiff.[12]

Schaumleffel contends that GMACM was more "blameworthy" than Schaumleffel because it: (1) should never have made the loan to Lum since he purportedly lied on his application materials to secure the Note and Mortgage; (2) had "ample opportunity to investigate and avoid the loss[;]" and (3) delayed in filing its foreclosure action, which directly caused harm to the public and Schaumleffel. Moreover, Plaintiff has been "dirtied" by GMACM's

---

[12] The Court notes that Schaumleffel cites to no Hawai`i law that supports application of this balancing test to void documents, and the Court is not aware of any.

conduct since it took the Assignment with full knowledge of the Fraudulent Satisfaction.  [Id. at 13-14.]

While the Court is sensitive to the harm caused to Schaumleffel by the conspirators' conduct, and the fact that Schaumleffel is a blameless victim of the fraud, it does not find that GMACM was complicit or blameworthy in any way.  First, the issue of whether GMACM was careless in extending a loan to Lum in 2007 is not relevant to whether it was careless in pursuing its rights in light of the Mortgage Satisfaction Packet in 2011.

Second, the Court finds that, under the circumstances, GMACM did not delay in investigating the fraudulent scheme and filing for foreclosure.  On or about August 19, 2011, GMACM received the Mortgage Satisfaction Packet.  [Pltf. CSOF at ¶ 7.] Just over thirty days later, on September 21, 2011, GMACM sent a letter to Lum threatening that, "[i]f you or an agent acting on your behalf, fraudulently attempt to release the lien securing the subject property without properly satisfying the underlying debt, GMACM may seek all available remedies under the law including, but not limited to, criminal prosecution and civil damages." [Schaumleffel CSOF, Exh. E.[13]]  Roughly three weeks

_____

[13] Schaumleffel offers exhibits to support his CSOF. However, with the exception of two exhibits, he does not provide any authentication for the exhibits.  In his opposition, he alludes to a "Declaration of Counsel," which does not appear on the docket.  It seems that his counsel inadvertently failed to file the declaration.  This issue is not determinative since the
(continued...)

later, on October 13, 2011, GMACM sent Lum a letter offering various loan modification, repayment, and sale options, demonstrating that Lum was in default again. [Id., Exh. F.] Approximately one month after that, on November 10, 2011, GMACM filed a Complaint for Foreclosure in the Circuit Court of the First Circuit, State of Hawai`i and, on November 14, 2011, a Notice of Pendency of Action with the Hawai`i BOC. [Id., Exhs. M, N.] It is unfortunate that, in the interim, on October 17, 2011, Schaumleffel purchased the Property and verified title. [Id., Exh. B.] Simply put, however, this timeline does not evidence any delay on the part of GMACM. It took reasonable steps to notify the public about its intention to foreclose and, even if it had discovered the fraud, the law does not require it to file notice in under thirty days.

Last, since GMACM was not lax, no negative attribution can be made with regard to Plaintiff. Thus, contrary to Schaumleffel's arguments, the Court FINDS that GMACM was not "negligent," "lax," "careless," "neglectful," or "incautious," see Mem. in Opp. at 11-14 (characterizing or quoting cases), or that the Fraudulent Satisfaction or harm to Schaumleffel is in

---

[13](...continued)
Court finds that his CSOF fails to raise any genuine issues of material fact, even if the exhibits had been properly authenticated.

any way attributable to GMACM.[14]  Plaintiff's interest thus

retains priority.[15]

## IV.  **Summary**

Since the Fraudulent Satisfaction is a forgery,

executed without authorization, and thus void, even viewing the

evidence in the light most favorable to Schaumleffel, the Court

FINDS that there is no genuine issue of material fact that

---

[14] Schaumleffel's cases are not to the contrary.  See, e.g.,
MI Co. v. McLean, 482 S.E.2d 597, 602 (S.C. Ct. App. 1997)
(agreeing that "corporation was negligent in sitting on its
rights for over five years"); Sunrise Sav., 524 So. 2d at 700
(mortgagee found lax for "his failure actively to pursue his
belatedly aroused suspicions for more than a year").  In fact,
they support the Court's conclusion here.  See, e.g., Sunrise
Sav., 524 So. 2d at 700 ("Where a mortgage has been cancelled
because of the fraudulent conduct of an intervening third party,
without authority from or consent of the mortgagee," it retains
its "priority, even against an innocent purchaser for value and
without notice, who relied on the record." (citation omitted));
In re O'Reilly, 30 B.R. 562, 564 (Bankr. N.D. Ohio 1983) ("In the
case where an intervening third party fraudulently cancels a
mortgage, without authority or consent of the mortgagee, the
result is the same as that of a mistaken cancellation as
previously described.  The mortgage could be revived without
damage to the mortgagee's priority.").

[15] The Court finds Plaintiff's case, Household Realty Corp.
v. Lambeth, 656 S.E.2d 336 (N.C. Ct. App. 2008), instructive.
The court there found that, under analogous circumstances to the
instant case, the original priority mortgagee was not blameworthy
because, *inter alia*: the letter it received from the fraud
perpetrator akin to the Mortgage Satisfaction Packet was "wholly
inadequate to raise [the mortgage's] suspicions of potential
impending wrongdoing[;]" and the mortgagee "filed a lawsuit
within four months of discovering the fraud, a reasonable
time[.]"  Id. at 341.

20

Plaintiff has a valid and enforceable interest in the Mortgage.[16]
See Grenning v. Miller-Stout, 739 F.3d 1235, 1238 (9th Cir. 2014)
("Summary judgment is appropriate when, with the evidence viewed
in the light most favorable to the non-moving party, there are no
genuine issues of material fact, so that the moving party is
entitled to a judgment as a matter of law." (citation and
internal quotation marks omitted)).  The Court thus GRANTS
summary judgment in favor of Plaintiff as to Count I, and
DISMISSES AS MOOT Count V.  Accordingly, the Court GRANTS a
declaratory judgment that the Mortgage continues to encumber the
Property as a valid and enforceable interest, and Schaumleffel's
interest remains subject to the Mortgage.

## CONCLUSION

On the basis of the foregoing, Plaintiff Ocwen Loan
Servicing, LLC's Motion for Summary Judgment, filed November 12,
2014, is HEREBY GRANTED.  The Court therefore GRANTS summary
judgment as to Count I of the Complaint on behalf of Plaintiff

---

[16] The Court reaches this conclusion in spite of
Schaumleffel's public policy arguments.  At the hearing, for the
first time, counsel for Schaumleffel argued that the Court should
find the Fraudulent Satisfaction voidable because it would
strengthen reliance on the public record.  While that is an
admirable objective, the Court finds it unwise to decide the
issue on a policy ground where doing so would countermand
established Hawai`i law.  Additionally, while not argued in
response, there are numerous policy arguments that could be made
for why it would be impractical to require mortgagees to
immediately investigate and/or file documents in the public
record whenever there is even the slightest suggestion of
impropriety.

and DISMISSES AS MOOT Count V.  Counts II through IV from the Complaint, as well as the cross-claims, and the third-party complaints, remain.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 20, 2015.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

OCWEN LOAN SERVICING, LLC VS. KENNY T. LUM, ET AL; CIVIL 13-00497 LEK-KSC; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT